State v. Ingram

STATE OF NORTH CAROLINA v. RAY THOMAS INGRAM

No. 7114SC170

(Filed 31 March 1971)

1. Receiving Stolen Goods § 6— instructions — felonious intent

Although the trial judge in his instructions did not use the words "felonious intent" in defining the offense of receiving stolen goods, the instructions nonetheless adequately required the jury to be satisfied beyond a reasonable doubt that the defendant acted with the requisite felonious intent.

2. Criminal Law § 154— record on appeal — addition of unauthorized items

Defense counsel's unauthorized adding of items to the record on appeal is condemned.

APPEAL by defendant from *Bickett, Judge of Superior Court,* 18 August 1970 Session, DURHAM Superior Court.

Defendant and one James Arthur Farrington were charged jointly in a bill of indictment containing three counts: (1) Felonious breaking or entering, (2) felonious larceny, and (3) receiving stolen property of a value of more than $200.00 knowing it to have been stolen.

The State's evidence tended to show the following. At about six o'clock p.m. on 16 April 1970 Mr. R. A. Brunson closed and locked the premises of "Brunson's," a retail appliance store, located on West Main Street in the city of Durham. At about

four o'clock a.m. the following morning (17 April 1970) an officer of the Durham Police observed a broken plate glass window at "Brunson's." It was determined that two television sets, one Zenith and one Magnavox, had been taken from "Brunson's" display window at the point where the plate glass was broken. At approximately nine-thirty o'clock a.m. of the same day (17 April 1970) another officer of the Durham Police observed the defendants at the rear of Scarborough Funeral Home in Durham. He observed defendants as they removed two television sets from the trunk of a 1970 Chrysler automobile, and carried them through the rear entrance into Scarborough Funeral Home. After defendants entered the Funeral Home they observed the officer inside and defendant Ingram remarked "Damn, Man, you got the police in here." Defendant Ingram was carrying the Zenith and defendant Farrington was carrying the Magnavox. The officer detained both defendants and notified the detective bureau.

Detective Moore went to the funeral home where he observed defendants and the two television sets. He escorted defendants, the television sets, and the 1970 Chrysler automobile to the police department. The television sets were identified as those missing from the display window of "Brunson's."

Detective Moore interrogated defendant Ingram at the police station where he was told the following by defendant Ingram:

"That Ray Thomas Ingram told him that he had borrowed this Chrysler that belongs to Willie Tomlin and he stated that he and James Arthur Farrington and Willie Tomlin were out riding around and that Willie Tomlin went home to go to bed so he could go to work the next morning, and that he loaned his car to Ray Ingram. That Ray Thomas Ingram stated that he and Arthur Farrington went to two or three places drinking and that he got drunk after drinking heavily. That Ingram stated he had been drinking all night and that he went home sometime around one o'clock. That James Arthur Farrington came and woke him up about 6:30 o'clock and both of them went down around Papa Jack's on Pettigrew Street to get them a drink and that some man they didn't know came up and told them he had two television sets and wanted them to take them to Scarborough's Funeral Home. He stated that this man was driving a green Chevrolet with New Jersey license plates on it."

Defendants offered no evidence.

The jury returned verdicts of "not guilty" upon the breaking or entering and the larceny counts (counts 1 and 2), and a verdict of "guilty" upon the receiving count (count 3).

Defendant Ray Thomas Ingram appealed.

*Attorney General Morgan, by Assistant Attorney General Hensey, for the State.*

*Winders, Williams & Darsie, by Charles Darsie, for defendant.*

BROCK, Judge.

[1] Defendant assigns as error that the trial judge failed to instruct the jury that receiving must be with a felonious intent. In his instructions to the jury the trial judge did not use the words "felonious intent" in his definition of the offense of receiving stolen goods. However, there are other words which define the felonious intent as adequately as the word "felonious" itself. For approval of phrases or words other than "felonious" to describe felonious intent, see *State v. Spratt,* 265 N.C. 524, 144 S.E. 2d 569; *State v. Mundy,* 265 N.C. 528, 144 S.E. 2d 572; *State v. Booker,* 250 N.C. 272, 108 S.E. 2d 426; *State v. Kirkland,* 178 N.C. 810, 101 S.E. 560 and *State v. Powell,* 103 N.C. 424, 9 S.E. 627.

We have carefully reviewed the instructions to the jury and in our opinion the instructions adequately require the jury to be satisfied beyond a reasonable doubt that defendant acted with the requisite (felonious) intent. This assignment of error is overruled.

[2] Defendant undertakes to assign as error that the trial judge settled the case on appeal by correcting the official trial transcript to reflect the verdict to be that which the trial judge found as a fact to be the verdict rendered by the jury. In this connection defense counsel added to the Record on Appeal two affidavits which were not served on the Solicitor and which were never considered by the trial judge. These two affidavits will be disregarded by this Court, and the unauthorized adding of items to the Record on Appeal is condemned. *State v. Houston,* 4 N.C. App. 484, 166 S.E. 2d 881. This purported assignment of error is overruled.

We have considered defendant's remaining assignments of error and find them to be without merit. In our opinion defendant has received a fair and impartial trial, free of prejudicial error.

No error.

Judges MORRIS and VAUGHN concur.