STATE OF NORTH CAROLINA v. HENRY JAMES BUMGARNER

No. 82

(Filed 8 January 1980)

**Criminal Law §§ 87, 99 — court's erroneous statement that calling witness would be unethical — witness not called — absence of prejudice**

Defendant was not entitled to a new trial because his attorney refrained from calling a witness who he knew would plead the Fifth Amendment after the trial court erroneously stated that it would be unethical for defendant's at-

torney to call such a witness where the court's subsequent statements made it clear that defendant was free to call the witness to testify for him; furthermore, defendant was not prejudiced by the court's statement where the State called the witness on rebuttal, defense counsel had full opportunity to present the witness's testimony on cross-examination and the witness's testimony supported defendant's version of the incident in question.

DEFENDANT was charged in an indictment, proper in form, with the second degree murder of one Johnny Sterling ("Red Dog") Smith on 23 January 1978. At trial before *Judge Brannon* at the 10 July 1978 Criminal-Civil Term of CATAWBA County Superior Court, State's evidence tended to show that on the night in question, defendant and two friends, Michael Wayne Cornell and James Dean McGinnis, went drinking at the "Klub," a bar and poolroom in Catawba County. As they were leaving the establishment at closing time, they attempted to strike up a conversation with two women who were parked in a car in the parking lot. The women, unwilling, drove off down the parking lot and stopped decedent in his car, requesting his assistance. In the meantime, defendant and his two friends had walked up to the two cars. Decedent Red Dog stepped out of his car and defendant immediately shot him three times, killing him.

Defendant's evidence, which included his own testimony, tended to show that he and his friends had left the bar and were walking toward their car when decedent Red Dog, a motorcycle gang member with a reputation for violence, opened his car door, striking defendant and knocking him off balance. Defendant then saw decedent advancing on him with something "shining" in his hand, and fired his own gun in fear.

Before testifying himself, defendant attempted to call one of the two friends, James Dean McGinnis, as an eyewitness but withdrew this witness when the trial court questioned the propriety of calling him.

The jury returned a verdict of guilty of second degree murder. Defendant was sentenced to a term of not less than 15 nor more than 25 years in prison. Defendant appealed to the Court of Appeals which granted a new trial. 42 N.C. App. 71, 255 S.E. 2d 663 (1979). The Attorney General petitioned this Court for discretionary review pursuant to G.S. 7A-31 and we allowed the motion on 20 July 1979.

*Attorney General Rufus L. Edmisten by Assistant Attorney General Amos C. Dawson III for the State.*

*J. Michael Gaither for defendant.*

CARLTON, Justice.

The Court of Appeals ordered a new trial on the sole ground that "it appears defendant was prevented from calling as a witness an eyewitness to the alleged crime because of an erroneous interpretation of the law by the presiding judge." The Court of Appeals reached its conclusion after reviewing a colloquy which took place between the trial court, counsel for the defendant, counsel for an eyewitness to the crime, and the assistant district attorney. The record discloses that when defendant's attorney stated to the trial court that he would call the eyewitness James Dean McGinnis as a witness for the defendant, McGinnis' attorney advised the court that his client would refuse to answer certain questions on fifth amendment grounds. During the ensuing colloquy, the trial court inquired whether his understanding was correct that the rules of ethics preclude an attorney from calling a witness when he knows the witness will take the fifth. The Canon of Ethics does not forbid this practice. The Court of Appeals, held, in essence, that this comment by the trial court was intimidating to counsel for defendant, was an erroneous interpretation of the law, and therefore entitled defendant to a new trial.

We do not think the Court of Appeals has properly interpreted the colloquy. Only a portion of that colloquy is printed in its opinion, but full reading of the exchange indicates that on at least five occasions during the colloquy, the trial court stated to defense counsel that he could call the witness if he desired to do so. At one point the trial court even said, "Now if you want to call this person you may do so." Moreover, the State did not object to the calling of the witness at any time. While the trial court was obviously confused about the Canon of Ethics, we think his subsequent statements made it clear that defendant was free to call this witness to testify for him. Where the court corrects an error or inadvertence, the error is ordinarily cured. *Cf. State v. Culp,* 5 N.C. App. 625, 169 S.E. 2d 10 (1969). (Court immediately corrected inadvertent reading of part of indictment in charge to

jury.) *See also State v. Withers,* 271 N.C. 364, 156 S.E. 2d 733 (1967).

Moreover, to warrant a new trial, defendant must show the ruling complained of was material and prejudicial to his right, *State v. Jones,* 278 N.C. 259, 179 S.E. 2d 433 (1971), and that a different result would likely have ensued, *State v. Sanders,* 276 N.C. 598, 174 S.E. 2d 487 (1970), *death sentence vacated,* 403 U.S. 948, 91 S.Ct. 2290, 29 L.Ed. 2d 860 (1971); *State v. Paige,* 272 N.C. 417, 158 S.E. 2d 522 (1968). Even if there were any conceivable error in the trial court's statement to counsel, it was subsequently rendered nonprejudicial when the State called the same witness McGinnis on rebuttal. At that time, defense counsel had full opportunity to present this witness's testimony on cross-examination, and the record reveals the witness told a story that supported defendant's version of the facts.

Defendant contends that the manner, tone, inflection and attitude of the trial court during this exchange were such that no subsequent statements by him could relieve the intimidation felt by his counsel so that he would be free to call the desired witness. On oral argument, defense counsel noted that this was his first experience in the trial court. The record discloses, and defense counsel concedes, however, that at the time of this exchange defense counsel was being assisted by another member of the Catawba County Bar whom he had associated because of his relative inexperience. Defense counsel argues that even the most experienced trial lawyer would have been intimidated by this trial court's behavior. Suffice it to say that the record before us does not disclose any prejudicial behavior on the part of this trial judge nor any intimidation by him of counsel for defendant. We agree with defendant that the cold record before an appellate court does not reveal the "tone" and "inflection" of trial participants. The only answer is that we give the most careful review to the record before us to ensure that no prejudicial error has occurred. We do not believe that the trial court erred in this instance and reverse the Court of Appeals.

In light of our holding above, it is necessary that we address the defendant's remaining assignments of error presented to the Court of Appeals. Prior to trial, defendant moved that the State's witnesses be sequestered on the grounds that it was necessary so

the jury could accurately gauge the veracity of these witnesses. The trial court denied the motion on the grounds that no notice had been given, that there was no reason appearing from the statement of counsel to sequester, and that the number of witnesses involved was too great for the limited area in the courthouse. The sequestration of witnesses is a matter of discretion within the trial judge and his ruling thereon is not reviewable absent a showing of abuse of that discretion. *State v. Willard*, 293 N.C. 394, 238 S.E. 2d 509 (1977); *State v. Tatum*, 291 N.C. 73, 229 S.E. 2d 562 (1976); Stansbury, North Carolina Evidence § 20 (Brandis rev. ed. 1973). Here, defendant has failed to show any prejudice by denial of the motion and we find no abuse of the trial court's discretion.

Finally, defendant contends that the trial court erred in denying his motions for directed verdict of not guilty and his motion for a mistrial. Defendant cites no authority in support of these contentions but requests this Court to review the record to determine the propriety of the trial court's action.

A motion for a mistrial in a case such as this one is addressed to the trial court's sound discretion, and his ruling thereon is not reviewable without a showing of gross abuse. *State v. Yancey*, 291 N.C. 656, 231 S.E. 2d 637 (1977); *State v. Daye*, 281 N.C. 592, 189 S.E. 2d 481 (1972). A motion for a directed verdict of not guilty challenges the sufficiency of the evidence to justify submission to the jury. *State v. Wilson*, 296 N.C. 298, 250 S.E. 2d 621 (1979); *State v. Glover*, 270 N.C. 319, 154 S.E. 2d 305 (1967); *State v. Wiley*, 242 N.C. 114, 86 S.E. 2d 913 (1955); *State v. Woodlief*, 2 N.C. App. 495, 163 S.E. 2d 407 (1968). Upon such a challenge, all the evidence admitted must be considered in the light most favorable to the State, and the State is entitled to every reasonable inference therefrom. *See State v. Wilson, supra; State v. Glover, supra; State v. Woodlief, supra.*

Suffice it to say that we have reviewed the entire record before us and find no error in the trial court's rulings on these motions. The evidence of defendant's guilt was certainly sufficient to permit the case to be submitted to the jury and defendant has failed to show any abuse of the trial court's discretion in denying the motion for mistrial.

State v. Bumgarner

Defendant had a fair trial, free from prejudicial error. The decision of the Court of Appeals is reversed and this case is remanded to that court with the instructions that it remand to the Superior Court of Catawba County for reinstatement of the trial court's judgment.

Reversed and remanded.